UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>United States of America</u>

   v.                                            Criminal No. 08-109-JD
                                               Opinion No. 2009 DNH 122

<u>Cedric Ross</u>

O R D E R

     A competency hearing was held on July 31, 2009, pursuant to 18 U.S.C. § 4241(c) and (d). On January 21, 2009, the court issued an order (document no. 15) granting the defendant's motion (document no. 13), agreed to by the government, for an evaluation to determine his mental competency to stand trial. The history of prior evaluations of the defendant and the results of those evaluations are summarized in the defendant's motion and in the reports hereinafter referred to and will not be repeated here.

     In connection with this case and in response to a request filed by the defendant, on December 23, 2008 the court ordered a competency examination by Dr. Albert Drukteinis, who had previously evaluated the defendant in connection with state court proceedings. In his report dated December 30, 2008, Dr. Drukteinis came to a number of conclusions, the following of which the court finds to be of significance in determining the defendant's competency to stand trial:

> . . . Mr. Ross' current presentation is quite unusual and with strong evidence of Malingering.  Also, with the background information available, and the observations at New Hampshire Hospital, there is no evidence to date that he has a serious mental illness which would substantially impair his ability to perceive or understand reality, or to rationally interpret his environment.  He does have evidence of Polysubstance Abuse, and a possible Cognitive Disorder/Learning Disorder, along with Mild Mental Retardation. . . .
>
> . . . Mr. Ross' responses to traditional questions posed in competency to stand trial evaluations, and his responses to the CAST-MR, are not a reliable measure of his actual impairment.  In fact, it more likely than not that Mr. Ross is much less impaired than he presents. . . . Certainly the type of mental condition that he has is not one that would be expected to deteriorate with time in a significant way, barring some superimposed psychological or drug related factors.  On the other hand, even if Malingering is present, this does not mean that he is not cognitively impaired in some way.  The diagnosis of Mild Mental Retardation alone can significantly limit his intellectual functioning and, by extension, his competency to stand trial.  Therefore, while Malingering appears to overshadow Mr. Ross' current presentation, it was not possible during this re-evaluation to affirmatively demonstrate his competency to stand trial.  Further observation in a setting where skilled professionals could monitor his behavior over a longer period of time, with a specific focus on such things as the degree of malingering, inconsistencies in his actions, and evidence of analogous functions to those required to be competent to stand trial, might be helpful.

Following the evaluation by Dr. Drukteinis, the defendant, with the assent of the government, moved for an evaluation by the Bureau of Prisons (document no. 13).

Pursuant to the court's order of January 21, 2009, the defendant was evaluated at the Federal Medical Center in Ayer, Massachusetts, by Dr. Shawn E. Channell, Forensic Psychologist, who filed a report dated June 8, 2009. That report, among other matters, sets forth the defendant's mental health history, including previous evaluations dating back to 2003. That history will not be repeated here.

In the section entitled "<u>CLINICAL FORMULATION</u>," Dr. Channell came to a number of conclusions, the following of which the court finds to be significant in determining the defendant's competency to stand trial:

> Mr. Ross's history shows clear evidence of malingering at least as early as 2003. . . . During both of Dr. Drukteinis's evaluations in 2008, Mr. Ross showed clear evidence of deliberately performing poorly on measures of cognitive abilities and Dr. Drukteinis diagnosed him with Malingering during both evaluations. During the course of the current evaluation, Mr. Ross continued to present with minimal effort to do well during testing or to provide information during interviews. His performance on the VIP and a forced-choice competency instrument (discussed below) clearly suggest a deliberate effort to appear more cognitively impaired than is actually the case....
>
> Based upon his presentation and performance on psychological testing, Mr. Ross has been diagnosed with Malingering. According to the *Diagnostic and Statistical Manual of Mental Disorders-Fourth Edition-Text Revision (DSM-IV-TR)*, the essential feature of Malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives, including the possibility of evading criminal prosecution.

>The fact that Mr. Ross is diagnosed with Malingering does not necessarily mean he does not have genuine cognitive limitations.  However, his consistent history of poor effort and exaggeration seriously calls into question the veracity of his previous diagnoses of Cognitive Disorder Not Otherwise Specified (NOS) and Mild Mental Retardation. . . . .
>
>. . . In summary, while it cannot be said in certainty what Mr. Ross's true level of intellectual functioning is, it can be said that it is greater than that demonstrated by formal testing.  Similarly, while it is not possible to entirely rule out the possibility that Mr. Ross does have significant intellectual limitations, neither can he be given the diagnosis of Mental Retardation with any degree of clinical certainty.  Given his history, it is more likely that he would meet diagnostic criteria for Borderline Intellectual Functioning.  Borderline Intellectual Functioning is distinguished from Mental Retardation primarily by the degree of impairment in intellectual and adaptive functioning, with significantly greater impairment for individuals with Mental Retardation.....

In that section of his report entitled "<u>OPINION ON PRESENT COMPETENCY TO STAND TRIAL</u>," Dr. Channell drew the following conclusions, among many others, that the court considers significant:

>. . . As was previously discussed, Mr. Ross was not diagnosed by this evaluator with Mental Retardation, however, he does appear to have borderline intellectual functioning. . . .  It is this evaluator's opinion that Mr. Ross has exaggerated his intellectual and cognitive difficulties in an effort to avoid the legal consequences of his criminal charges.  As appears to have been the case in the past, Mr. Ross may continue to attempt to exaggerate his deficits and not put forth his best effort in court or other evaluations, as this has thus far proven to be a successful strategy for him.  Interestingly, while Mr. Ross has attempted to present himself as unable to assist in his defense, his

4

>     malingering itself shows that not only is he aware of
>     the seriousness of the present charge, he is motivated
>     to act in a way he believes will help him in his case.
>     In conclusion, it is the opinion of the undersigned
>     that Mr. Ross is not presently suffering from a mental
>     disease or defect rendering him mentally incompetent to
>     the extent he is unable to understand the nature and
>     consequences of the proceedings against him or to
>     assist properly in his defense.

The court must review all of the evidence that is before it to determine by a preponderance of the evidence if the defendant is presently suffering from a mental disease or defect that renders him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or he is unable to assist properly in his defense. 18 U.S.C. § 4241(a).  The court has considered the evaluations by Dr. Drukteinis dated December 30, 2008 and August 13, 2008, the evaluation by Dr. Channell dated June 8, 2009, and the testimony of Dr. Channell at the July 31, 2009 hearing.

As recommended by Dr. Drukteinis in his December 30, 2008 report, Dr. Channell had the opportunity to observe and monitor the defendant over a period of several months during which time the defendant was administered a battery of psychological and other tests.  The court finds, as determined by Dr. Channell, that the defendant has "Borderline Intellectual Functioning" with "limited, though not significantly impaired, intellectual abilities."  The defendant has an established history of

malingering and this has been reflected in the results of the many evaluation tests that have been administered to him.  While he relies, to a very significant degree, on his attorney to tell him what to do, he is not without some understanding of the legal process although that understanding may be limited.  Indeed, it is not unusual for defendants in criminal cases to rely heavily on the advice of their counsel given the complexity of the law, the sentencing guidelines, the sentencing process, the plea bargaining process, and the trial process.  Dr. Channell noted that "it also appeared that Mr. Ross possessed greater knowledge of the legal process than was demonstrated."

Taking into account all of the evidence before the court, the court finds that the defendant meets the standard of competency to stand trial.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

August 12, 2009

cc:   Terry L. Ollila, Esquire
      Jonathan R. Saxe, Esquire